**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

SHENZHEN MIRACLE LAPTOP BAGS CO.,
LTD,

                  Plaintiff,

     v.

MICHAEL CASTILLO,

                  Defendant.

**PRELIMINARY INJUNCTION**
**ORDER**
22-cv-7734 (HG)

**HECTOR GONZALEZ**, United States District Judge:

      Plaintiff Shenzhen Miracle Laptop Bags Co., Ltd. ("Shenzhen") seeks entry of a

preliminary injunction against Defendant Michael Castillo pursuant to Federal Rule of Civil

Procedure 65.

      The Court has reviewed Plaintiff's Complaint, ECF No. 1; the Motion for a Temporary

Restraining Order, ECF No. 10; the Declaration of Yun Xu, ECF No. 11; Defendant's Reply in

Opposition, ECF No. 21; the arguments made by the parties at the January 11, 2023, Show Cause

Hearing, ECF Minute Entry, January 11, 2023; the Parties' supplemental letters, ECF Nos. 22–

28; and all pleadings and papers previously filed herein.  For the reasons stated herein, the Court

grants in part and denies in part Plaintiff's motion for entry of a preliminary injunction against

Defendant.

**BACKGROUND**

      Plaintiff Shenzhen Miracle Laptop Bags Co., Ltd. ("Shenzhen") is a Chinese company,

founded in 2005, which designs, produces, and sells laptop bags and phone accessories, mainly

for export.  ECF No. 1 ¶ 2.  Defendant Michael Castillo is the individual who applied for and

was granted the "MIRACASE" trademark.  *Id.* ¶ 3.

In 2009, Plaintiff created the trademark "MIRACASE" ("Miracle Phone Case") in 2009 and purchased the domain name "miracase.com."  ECF No. 1 ¶ 8.  Plaintiff applied for its "MIRACASE" mark on September 13, 2013.  The mark ("Plaintiff's Mark") was successfully registered on September 2, 2014.  *Id.* ¶ 15; *see also* ECF No 1-1 (Exhibit A—Plaintiff's Trademark).  In 2017, Plaintiff opened its Amazon.com, Inc. ("Amazon") store selling protective phone cases and later mobile phone holders.  ECF No. 1 ¶ 13.  Plaintiff needed to file its Section 71 declaration with the United States Patent and Trademark Office ("USPTO") before September 2, 2020, *id.* ¶ 16, which it did, *id.* ¶ 17.  However, on September 28, 2020, the USPTO identified a discrepancy in Plaintiff's Section 71 declaration, *id.* ¶ 16, and asked for clarification, *id.* ¶ 19.  Plaintiff's attorney did not understand that a response was required, and thus did not file a response.  *Id.* ¶ 20.  As a result, on April 6, 2021, the USPTO notified the Plaintiff that its trademark registration was canceled due to failure to provide a proper Section 71 declaration.  *Id.* ¶ 21.  However, this cancellation was temporary, and Plaintiff's Mark was reinstated on February 25, 2022.  *Id.* ¶ 22.

On July 26, 2021, Defendant applied for a MIRACASE trademark.  ECF No. 18-1 ¶ 6 (Defendant's Declaration).  The mark ("Defendant's Mark") was published on May 10, 2022, and approved on July 26, 2022.  *Id.* ¶¶ 7–9.  Plaintiff alleges that Defendant's Mark application was fraudulent because, *inter alia*, Defendant:  (i) submitted Plaintiff's product to the USPTO when Defendant applied for his trademark, and (ii) claimed Plaintiff's Amazon page was Defendant's Amazon page.  ECF No. 1 ¶¶ 28–31.  However, Plaintiff did not file any opposition

2

to Defendant's trademark application during the thirty-day window after Defendant's Mark was published but before it was approved, when such oppositions are normally filed.[1]  *Id.* ¶¶ 8–9.

On January 11, 2022, Plaintiff filed an application with the USPTO for a "MIRACASE" word mark for carrying cases for mobile phones.  ECF No. 18-1 ¶ 24; *see also* ECF No. 18-3 (Exhibit C: Plaintiff's Word Mark Application).  Defendant filed an opposition to Plaintiff's application.  ECF No. 18-1 ¶ 25; *see also* ECF No. 18-4 (Exhibit D: Defendant's Opposition to Plaintiff's Word Mark Application).  Plaintiff's latest application is pending resolution due to Defendant's opposition; the matter is presently proceeding through discovery before the USPTO Trademark Trial and Appeal Board for resolution.  *Id.* ¶ 26.

On October 25, 2022, and again on November 18, 2022, Defendant filed trademark infringement complaints with Amazon alleging that Plaintiff's products infringed on Defendant's Mark.  ECF No. 1 ¶¶ 42–43.  Amazon initially took down the two products that Defendant identified in his complaints, *id.* ¶ 44, before later restoring them.  *See* ECF No. 21 at 5.

## PROCEDURAL HISTORY

On December 19, 2022, Plaintiff filed the instant lawsuit.  Plaintiff's causes of action include:  (i) trademark infringement; (ii) false designation of origin; and (ii) unfair competition.  Plaintiff also seeks a declaratory judgment that it "is not infringing, has not infringed, and is not liable for infringing" Defendant's Mark.  ECF No. 1 ¶ 87.  Plaintiff simultaneously moved for a Temporary Restraining Order ("TRO") and Preliminary Injunction.  ECF Nos. 10, 12.  Plaintiff

---

[1]    See *Approval for Publication*, U.S. PATENT & TRADEMARK OFF., https://www.uspto.gov/trademarks/basics/approval-publication (last visited January 27, 2023) ("Publication begins a 30-day period during which any member of the public who thinks they'll be harmed by the registration of your trademark may oppose it.").

initially requested that Defendant be enjoined from "filing or otherwise communicating any allegations of trademark infringement by Plaintiff to any third party for the duration of the instant litigation relative to the MIRICASE [sic] products referenced in the Complaint."  ECF No. 12 at 1.  Plaintiff further requested that Defendant be ordered to "[r]etract the Amazon trademark infringement complaints."  *Id*.  Later, after Defendant withdrew his complaints against Plaintiff on Amazon, Plaintiff requested that the Court instead "enter a narrowly tailored preliminary injunction against Defendant, refraining him from filing more trademark infringement claims to Amazon.com or another third-part marketplace."  ECF No. 23 at 1.

The Court deferred the motion for a TRO, issued an order to show cause, and set a show cause hearing date of January 11, 2023, on the preliminary injunction application.  ECF No. 14.  On January 6, 2023, Defendant filed his opposition.  ECF No. 18.  On January 10, 2023, Plaintiff filed its reply.  ECF No. 21.  Plaintiff's reply noted that due to intervention from "Amazon's outside counsel," Plaintiff's listings had been restored on the Amazon website.  *Id*. at 5.

On January 11, 2023, the Court held a hearing to address the request for a preliminary injunction.  At that hearing, the Court declined to issue a preliminary injunction at that time, because Plaintiff no longer needed the primary relief that it was seeking after its products were relisted on Amazon.  Instead, the Court held the motion for a preliminary injunction in abeyance and asked the parties to meet and confer by January 25, 2023, on a possible stipulation to maintain the *status quo ante*.  ECF Minute Entry, January 11, 2023.

On January 14, 2023, Plaintiff filed a letter on the docket indicating that not long after the hearing Defendant had filed new complaints with Amazon, and that several of Plaintiff's products had once again been delisted.  ECF No. 22.  Defendant does not deny that he filed new

4

complaints immediately after the hearing, but indicated that he had quickly "withdrawn the Amazon complaints over which Plaintiff complains and has no intention to file additional trademark infringement complaints on Amazon through January 25, 2023."  ECF No. 24 at 1–2. The fact that Defendant quickly withdrew his Amazon complaints against Plaintiff, however, did not stop Amazon from warning Plaintiff that, due to those complaints, Plaintiff's accounts were "at risk of imminent deactivation."  ECF No. 26-2 ("We have received a report from a rights owner that one or more of your items are counterfeit or counterfeit.").  Plaintiff still requested that the Court issue a preliminary injunction, ECF No. 26, but because Defendant had already agreed to the relief Plaintiff requested—withdrawing the complaints and agreeing not to file any additional complaints, *see* ECF Nos. 24, 25—the Court declined to do so before the January 25, 2023 deadline.  On January 25, 2023, each party filed a letter indicating that the parties had not been able to reach an agreement.  *See* ECF No. 27 at 1 (Defendant's letter), ECF No. 28 at 1 (Plaintiff's letter).

## LEGAL STANDARD

"A party seeking a preliminary injunction must establish, by clear and convincing evidence:  (1) a likelihood of ultimate success on the merits; (2) that the plaintiff is likely to suffer irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of the injunction."  *Sound Around Inc. v. Shenzhen Keenray Innovations Ltd.*, No. 22-cv-6943, 2022 WL 17811475, at *2 (E.D.N.Y. Dec. 18, 2022);[2] *see also Cnty. of Nassau v. Leavitt*, 524 F.3d

---

[2]      Unless noted, case law quotations in this order accept all alterations, and omit internal quotation marks, citations, and footnotes.

5

408, 414 (2d Cir. 2008).  "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion."  *Sound Around*, 2022 WL 17811475, at *2 (emphasis in original).  "The purpose of such interim equitable relief is not to conclusively determine the rights of the parties but to balance the equities as the litigation moves forward."  *Id*; *see also Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017).

## DISCUSSION

### I.  Irreparable Harm

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered."  *Sound Around*, 2022 WL 17811475, at *2.  Irreparable harm exists when "the plaintiff's legal interests . . . could not be remedied after a final adjudication," such as when "the loss is difficult to replace or measure, or where plaintiffs should not be expected to suffer the loss."  *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012).  To show irreparable harm the moving party must establish that "there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation."  *Sound Around*, 2022 WL 17811475, at *3; *see also Allstate Ins. Co. v. Harvey Family Chiropractic*, 677 F. App'x 716, 718 (2d Cir. 2017) ("Irreparable harm exists where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.").

According to Plaintiff, it will suffer irreparable harm because Defendant's complaints to Amazon "threaten its business relationship with Amazon, which is the foundation that Plaintiff's business is built on," given that "Plaintiff receives over 95% of its revenue from sales made on Amazon.com since its incorporation."  ECF No. 10 at 12.  Defendant's initial complaints led to the removal from Amazon of several of Plaintiff's products.  ECF No. 11 ¶¶ 7–11.  Even after those products were restored, subsequent complaints by Defendant led to more products being taken down, ECF No. 22 at 2, and a warning from Amazon that Plaintiff might be banned from Amazon's platform as a result of those complaints.  ECF No. 26 at 1–2.

Even if the issues Plaintiff has raised since the January 11, 2023, hearing have been resolved, *see* ECF Nos. 22, 26, future complaints could still lead to Plaintiff being banned from Amazon, "the consequences of which could be severe for Plaintiff's business and reputation." *Sound Around*, 2022 WL 17811475, at *3.  "It is well recognized that the inability of a party to supply its products to customers as a result of a dispute will often result in a loss of goodwill sufficient to establish irreparable harm."  *Home It, Inc. v. Wen*, No. 19-cv-7070, 2020 WL 353098, at *3 (E.D.N.Y. Jan. 21, 2020); *see also Really Good Stuff, LLC v. BAP Invs., L.C.*, 813 F. App'x 39, 44 (2d Cir. 2020) ("The loss of reputation and goodwill constitutes irreparable harm."); *Bionpharma Inc. v. CoreRx, Inc.*, 582 F. Supp. 3d 167, 175 (S.D.N.Y. 2022) ("[D]epriving a party of the opportunity to sell an entire line of merchandise may cause that party to incur injury to its goodwill and reputation as a dependable distributor.  This reputational damage is difficult to repair because even in the event that [plaintiff] finds an alternative supplier, customers may refuse to return to [plaintiff], because of its lack of dependability in supplying its product.").  Defendant has already filed additional trademark complaints on

Amazon during the pendency of this litigation and may well continue to file complaints now that the Court's January 25, 2023, deadline has passed.  Future complaints would put Plaintiff at risk of losing its ability to sell on Amazon, which could "damage Plaintiff's reputation and relationships with online [customers] as well as impact Plaintiff's sales and revenue."  *Sound Around*, 2022 WL 17811475, at *3.  The Court therefore concludes that Plaintiff has established irreparable harm.

## II.      Likelihood of Success

"To establish a likelihood of success on the merits, a plaintiff need not show that success is an absolute certainty.  He need only make a showing that the probability of his prevailing is better than fifty percent."  *Home It*, 2020 WL 353098, at *5.  Plaintiff does not need to establish likelihood of success on all of its claims, but on at least one of its claims.  *Sound Around*, 2022 WL 17811475, at *4.  The Court finds that, at a minimum, Plaintiff has demonstrated a likelihood of success on the merits of Plaintiff's tortious interference claim.  ECF No. 1 at 16–17.

"Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that:  (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship."  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006).  Plaintiff has sufficiently demonstrated, at least at this preliminary stage of the litigation, that it will prevail on its tortious interference claim because:  (i) Plaintiff had a relationship with a third party, Amazon, ECF No. 11 ¶¶ 3–6; (ii) Defendant was aware of

Plaintiff's relationship with Amazon and allegedly intentionally interfered with that relationship by filing trademark infringement complaints, ECF No. 1 ¶ 99, ECF No. 22 at 1; (iii) Defendant allegedly defrauded the USPTO in order to obtain Defendant's Mark by, *inter alia*, submitting Plaintiff's product as if it was Defendant's, and used that trademark dishonestly, ECF No. 1 ¶ 100, ECF No. 10 at 7–9; and (iv) Defendant's interference allegedly caused injury to Plaintiff by damaging its reputation with Amazon, which warned Plaintiff that its online storefront could be suspended as a result of Defendant's complaints, ECF No. 1 ¶ 101, ECF No. 26.  The Court therefore concludes that Plaintiff has sufficiently demonstrated that it is likely to succeed on its tortious interference claim.

### III.    Balance of Hardships

"When assessing the balance of hardships between the parties, [t]he relevant harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Pearson Educ., Inc. v. Labos*, No. 19-cv-487, 2019 WL 1949820, at *5 (S.D.N.Y. Apr. 23, 2019); *see also Salinger v. Colting*, 607 F.3d 68, 75 (2d Cir. 2010).  Because "Plaintiff has sufficiently demonstrated:  (i) irreparable harm"—given that renewed complaints by Defendant to Amazon could have significant consequences to Plaintiff's reputation and revenue—and "(ii) likelihood of success on the merits" of Plaintiff's tortious interference claim, "the Court finds that Plaintiff has met its burden to establish hardship." *Sound Around*, 2022 WL 17811475, at *4.

Defendant's argument for why the balance of hardships favors denial of the preliminary injunction is that such "relief would directly interfere with ongoing proceedings before the [USPTO's Trademark Trial and Appeal Board] and inflict untold damage upon [Defendant's

Mark], and accompanying business opportunities." ECF No. 18 at 2. The Court agrees that Plaintiff's initial request, to enjoin Defendant from "filing or otherwise communicating any allegations of trademark infringement by Plaintiff to any third party," ECF No. 12 at 1, may have interfered with ongoing proceedings. However, Plaintiff's latest request, that the Court "enter a narrowly tailored preliminary injunction against Defendant, refraining him from filing more trademark infringement claims to Amazon.com or another third-party marketplace," ECF No. 23 at 1, should not cause any hardship to the USTPO proceedings. Even while the preliminary injunction is in place, Defendant may still communicate his allegations of trademark infringement to the USPTO. As to Defendant's second point, he has provided no evidence or explanation of what "untold damage" would result if Defendant were enjoined from filing new complaints on Amazon against Plaintiff for the duration of this litigation. The Court therefore concludes that Plaintiff has demonstrated that the balance of hardships weighs in its favor.

## IV. Public Interest

"[A] court must ensure that the proposed injunction will not harm the public interest." *Home It*, 2020 WL 353098, at *6; *see also Hope Organics LLC v. Preggo Leggings LLC,* No. 21-cv-2416, 2021 WL 5919367, at *13 (S.D.N.Y. Dec. 15, 2021) ("The consideration of the public interest is designed to ensure that the public interest would not be disserved by the issuance of a preliminary injunction.") The Court concludes that there would be no disservice to the public by issuing a targeted preliminary injunction and finds that "the public interest is served by such an injunction against the assertion of what at this preliminary stage clearly and convincingly appears to be wrongful and fraudulent claims to a right to a trademark." *Country Fare LLC v. Lucerne Farms*, No. 11-cv-722, 2011 WL 2222315, at *10 (D. Conn. June 7, 2011).

## V.        Preliminary Injunction Bond

Federal Rule of Civil Procedure 65(c) states that a preliminary injunction shall not issue

unless the movant gives security, so as to ensure that "any party who is found to have been

wrongfully enjoined may recover any costs and damages incurred by the injunction."  *Sound*

*Around*, 2022 WL 17811475, at \*5.  However, "[i]t is within the discretion of the district court to

decide that, under the circumstances, no security is required."  *Id*.

Defendant argues that the Court should require Plaintiff to post a cash bond of at least

two million dollars.  ECF No. 18 at 15.  He argues that this would be appropriate because

Plaintiff is "not registered to conduct business in the United States and does not appear to even

have assets here or any physical presence," and thus could "leave [Defendant] with no financial

recovery" in the event he has been found to be wrongfully enjoined.  *Id*.  However, besides

Defendant's earlier conclusory assertion that being enjoined from filing complaints on Amazon

against Plaintiff would cause "untold damage" to Defendant's Mark and "accompanying

business opportunities," ECF No. 18 at 7, Defendant does not provide any further explanation as

to how this injunction would harm him or what his damages might be.  *Cf. Rex Med. L.P. v.*

*Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 626 (S.D.N.Y. 2010) (requiring plaintiff to

post a bond where defendant provided evidence of its monthly losses and estimated possible

damages).

Because Defendant has failed to identify "any damages or costs that [he] will suffer as a

result of the injunction," and the Court cannot conceive of any, the Court waives the bond

requirement.  *Sound Around*, 2022 WL 17811475, at \*5; *see also Home It*, 2020 WL 353098, at

\*6; *725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 470 (S.D.N.Y. 2019) ("Because

11

Defendants do not identify any costs or damages they may incur if wrongfully enjoined, this Court waives the Rule 65(c) bond requirement in its discretion."); *Rex Med. L.P.*, 754 F. Supp. 2d at 626 ("It is well-settled that a district court has wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm [to the non-movant].").

**<u>CONCLUSION</u>**

For the reasons stated above, Plaintiff's motion for a preliminary injunction is GRANTED in part and DENIED in part.  The Court will issue the preliminary injunction order as a separate docket entry.

SO ORDERED.


/s/ *Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge


Dated:  Brooklyn, New York
        January 27, 2023

12